## ABRAMS v. MANN.*
### No. 16879.

Court of Appeal of Louisiana. Orleans.
March 21, 1938.

* Rehearing refused April 4, 1938.

Wm. McLeod, of New Orleans, for appellant.

Jos. Rosenberg, of New Orleans, for appellee.

JANVIER, Judge.

Lottie Abrams, who had leased from Leon Mann a one-room apartment on the second floor of a building owned by Mann and designated as No. 748 Dryades street, alleges that she received physical injuries when, because of a defective balustrade against which she leaned, she fell to the ground below. She seeks recovery from her said lessor.

The lessor avers that the balustrade was in good condition, but that it was weakened when plaintiff "engaged in a fistic encounter and fight with a negro known as 'Rail Head,'" during the progress of which plaintiff "was thrown down the steps by the said 'Rail Head,' coming into contact with the rail on the side of the steps, which was thereby weakened." The lessor also alleges that on the next day, and after the railing had thus been damaged, plaintiff while intoxicated, fell down said steps and sustained the injuries which form the basis of this suit.

In the court below there was judgment for defendant and plaintiff has appealed.

Only a question of fact is presented for consideration. If plaintiff, while using the stairway and rail in a proper manner, fell because of the defective condition of the rail, defendant is liable for the injuries sustained. If, on the other hand, the stair rail was weakened because of the brawl in which plaintiff is alleged to have been engaged, or if she was hurt as the result of falling while in an intoxicated condition, there is no liability.

Plaintiff denies that she was engaged in a fistic encounter with "Rail Head" or any one else and says: " * * * When I got to the last step, I caught hold of the bannister and on my way coming back up, on the third to last step, it turned and I

grabbed and the bannister gave way with me and knocked me out."

We note that although, in her petition, she made no charge that there was any defect in the "step," she here states that it was a defect in the step itself which made it necessary for her to grab the rail, which then gave way. On objection by counsel for defendant, all evidence concerning any alleged defect in the step was properly excluded because of the fact, as we have stated, that there was in the petition no allegation touching upon such defect. We therefore refer to this testimony only because it indicates uncertainty on the part of the plaintiff as to the real cause of her fall. Surely, if the step had actually turned, she would have told her attorney about it and he, as certainly, would have referred to it in the petition.

Supporting her testimony as to the breaking of the rail we find statements by Juanita Thomas and Eugene Morris. The Thomas woman says: " * * * She caught hold of the bannister and the bannister broke and * * * she was knocked unconscious on the ground."

Morris describes the accident as follows: " * * * She started up the stairway and she caught the bannister with one hand and the bannister broke and she fell with her head down, the step and her, and her feets were up."

Morris denies that plaintiff engaged in any scuffle or fight with any one.

To contradict this evidence no witness appeared for defendant, but the record contains an admission that "if the witness Earl Williams, who was unable to be present, was in court, he would testify as follows: " * * * that the plaintiff herein, Lottie Abrams, on the morning of the alleged accident, had a fight with one negro known as 'Rail Head'; that the said 'Rail Head' in the encounter and scuffle, threw her (Lottie Abrams) down the stairway and that in falling, the bannister gave way; that the said witness would further testify that the said bannister was in safe and sound condition but that the same gave way under the weight and pressure of the plaintiff's body falling against same."

Numerically, then, we find that three persons testify to the facts as contended for by plaintiff and only one contradicts these three. However, the judge a quo found himself unable to believe the evidence tendered by plaintiff, and we have no doubt that he was influenced largely by the actions and demeanor of the witnesses on the stand and by the characters of some of these witnesses.

I. U. McCormack, a witness for the plaintiff who testified to the taking of certain photographs, admitted, after first failing to remember anything about it, that only very recently he had pleaded guilty "to the charge of indecent assault on an unmarried female, a child of ten years of age," and that he had received a sentence of six months in the parish prison.

Plaintiff herself is shown beyond the shadow of a doubt to have been a common prostitute and to have been convicted some thirty or forty times of various crimes and misdemeanors.

Under the circumstances, the record does not justify our reaching the conclusion that the judge of the trial court was manifestly in error when he dismissed plaintiff's suit.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.